SHIPP *et ux. v.* BELT RAILWAY COMPANY *et al.*

(*Knoxville.*   September Term, 1915.)

1. RAILROADS.  Farm crossings.  Construction.  Jurisdiction.
   The chancery court has jurisdiction to compel a railroad com-
   pany to make a grade crossing to allow an owner of land on
   both sides of the track to pass from one side to the other.
   (*Post, p.* 242.)

Code cited and construed: Sec. 2419 (S.).

2. RAILROADS.   Farm crossings.   Statutory provisions.
   Shannon's Code, sec. 2419, providing that when land on both sides
   of a track is owned by the same proprietor, convenient crossings
   shall be made and kept up at the expense of the corporation,
   covers crossings over railroad lines together with side tracks,
   spur tracks, and switch yards.  (*Post, pp.* 242, 243.)

Case cited and distinguished:  Chalcraft v. Railroad Co., 113
Ill., 88.

3. RAILROADS.   Farm crossings.   Right to maintain.
   Where a proprietor owns land on both sides of a railroad track,
   no crossing will be ordered at a point which would directly
   and materially imperil the safety of transportation, the rights
   of the public being paramount to those of the individual.
   (*Post, p.* 243.)

4. RAILROADS.  Crossings.   Expense of construction.
   Where a proprietor owns land on both sides of a railroad track,
   a crossing will not be ordered constructed at a point where the
   cost of construction and maintenance will be out of all propor-
   tion to the benefits.  (*Post, pp.* 243, 244.)

5. RAILROADS.  Crossings.   Rights of owner.   Estoppel.
   An owner of land on both sides of a railroad track, who conveyed
   an additional strip for a right of way for switch tracks, can-

not, after having had the land reconveyed to him, compel the railroad company to construct a crossing where no provision therefor was made in the conveyance. (*Post, pp.* 244-246.)

## FROM HAMILTON.

APPEAL from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— T. M. McCONNELL, Chancellor.

COOK & NOLL, for complainants.

SHEPHERD, FLEMING & SHEPHERD, for defendants.

MR. SPECIAL JUSTICE FRANTZ delivered the opinion of the Court.

The original bill in this cause was filed in the chancery court of Hamilton county, Tennessee, for the purpose of having established a crossing over the right of way of the defendant from one portion of the property of the complainants lying on one side of the railway to an eighteen acre tract of land belonging to the complainants lying upon the opposite side of same; convenient access to which has been cut off by the construction of a switch yard by the railway company upon the right of way acquired in the manner presently to be set out.

On the 14th day of May, 1884, J. S. Shipp and others, being tenants in common of a tract of land lying adja-

cent to the city of Chattanooga, conveyed to the Union Railway Company and its successors and assigns a strip of land fifty feet wide through said tract for the purpose of constructing and maintaining thereon a railroad with one or more tracks upon the same. The railway company built its line upon said right of way thus acquired, and operated its trains over the same, and thereafter the Belt Railway Company, defendant herein, became the successor in title to said property.

In 1886 the said tract of land was partitioned, and a tract of land containing fifty-eight acres, which is now involved, was acquired by J. F. Shipp.

On the 26th day of May, 1900, J. F. Shipp and wife conveyed this tract of land by general warranty deed to George W. Davenport.

On the 20th day of October 1906, George W. Davenport and wife joined with J. F. Shipp and wife in the execution of a general warranty deed to the Georgia Industrial Realty Company, of a sufficient amount of land to make a strip two hundred and six feet wide through said tract of land, excepting from this conveyance the lands previously conveyed to the Belt Railway, the consideration for this conveyance being $2,500. This conveyance was without reservation.

Thereafter the land excepting the above conveyance was reconveyed by Davenport to Mrs. J. F. Shipp, and thereafter the Georgia Industrial Realty Company conveyed the aforesaid strip of land to the defendant Belt Railway Company, which thereupon proceeded to

construct a switch yard containing some ten or twelve tracks over and upon the same.

The bill in this case seeks to establish a crossing over and through this switch yard. The chancellor granted the complainants the relief asked by ordering the construction of a grade crossing through the property in question, and referred the case to the master to ascertain the amount of damages accruing to complainants for loss of rents and profits by reason of being cut off from said eighteen-acre tract, and damages accruing to them on account of the use of said lands for a switch yard.

Upon appeal the court of civil appeals affirmed the chancellor to the extent of allowing and ordering the crossing to complainants, but reversed the chancellor with respect to the allowance of damages.

Both parties have brought the cause to this court by *certiorari* for review.

On the part of the complainant it is insisted that they are entitled to this crossing by reason of the provision of Shannon's Code, sec. 2419, as follows:

"When land on both sides of a track is owned by the same proprietor, convenient crossing shall be made and kept up at the expense of the corporation for the use of said proprietor, and all necessary cowgaps made."

It is further contended that they are entitled to such crossing as a way of necessity, and also by reason of the fact that they had been promised a crossing.

We may dispose of the proposition that they had been promised a crossing by the statement that the proof does not establish such promise.

133 Tenn. 16

It is objected that the chancery court is without jurisdiction to grant the relief sought. The point is not well taken. If complainants are entitled to the crossing, clearly the right may be enforced in equity, and the court of equity, having taken jurisdiction for one purpose, will retain it for the settlement of the entire controversy between the parties.

It is contended on behalf of the defendant railway company that the statute above referred to has no application to switch yards, but refers only to the ordinary railway line extending through tracts of land. This question seems to be one of first impression in this state.

It will be observed that our statute is a broad one and, in our opinion, is not meant simply to cover a farm crossing over the main line of a railroad, but to cover crossings over said line or lines together with side tracks, spur tracks, and switch yards where the same may be done within the principles hereinafter laid down.

In dealing with an analogous question arising under a similar statute the supreme court of Illinois, in the case of *Chalcraft* v. *Railroad Company*, 113 Ill., 88, said:

"In giving construction to the statute, it is quite evident it could not have been intended the interests of the landowner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public. It would not be reasonable to suppose that it was contemplated that a rail-

road company should be compelled to erect and maintain a crossing at a point where the expenses of so doing would be very greatly in excess of all benefits that could result therefrom to the landowner or occupant. Moreover, the rule is general that where a conflict arises between a mere private convenience on the one side and the public welfare on the other, and one must give way, the former must yield to the latter. The public welfare demands as high a degree of safety in the transportation of persons and property by railroad as is reasonably attainable in view of the character and exigencies of that mode of transportation, and anything, therefore, which tends to directly and materially imperil the safety of such transportation, is so far inconsistent with the public welfare, and ought not to be allowed for the mere sake of a private convenience.''

We agree with the principles laid down by that court. No crossing will be required or allowed at a point which would tend to directly and materially imperil the safety of transportation, for where the rights of the individual come in conflict with those of the public, the rights of the individual must yield.

Neither will a crossing be allowed at a point where the expense of constructing and maintaining the same will be out of all proportion to the benefits arising to the property owner.

The proof in this case tends strongly to show that the construction and maintenance of a crossing such as is contended for by the complainants and allowed by the lower courts would be destructive of the rights of the

railroad company, its use dangerous to the property owner, and probably detrimental to the public interests.

A switch yard is not only a necessary and proper corporate use, but is a necessary public use in the operation of railroads, and where land has been acquired by the railroad company as in the present case, such use will be held to be within the reasonable contemplation of the parties.

What we have said with respect to the limitation of rights arising under the crossing statute applies more strongly to the way of necessity sought to be acquired if, indeed, a way of necessity arises in such a case.

The complainant is precluded, however, in this case by its peculiar facts. When the original strip of land was conveyed to the railroad company undoubtedly the right to a crossing was reserved in the property owner by the terms of this statute and possibly a way of necessity arose independent of statute. However, when the property owner has conveyed through the realty company to the railway company, a strip of land on either side of said right of way, in fee, of a sufficient amount of land to make a total strip of two hundred and six feet wide, such conveyance being by warranty deed without any reservation of such crossing, we hold that he is thereafter estopped by the terms of his deed to claim it.

In other words, when the original conveyance of rightof way was made to the Union Railway Company, the right to a crossing thereof, both under the statute

and at common law, immediately arose and became appurtenant to the contiguous land, and when such contiguous land on both sides of this railway was thereafter conveyed by warranty deed without any reservation of such right, it passed to the grantee under the deed, and through it to the railway company, for whom it was admittedly acting.

It is conceded that at the time of the acquisition of this additional land the railway company did not have the power to condemn lands for this character of switch yards. This does not mean, however, that switch yards are not regarded as a legitimate public use, but is upon the theory that they are of such a nature that they are not necessarily to be placed at any particular location.

Not only is this true, but the Railway Company did not have the power to condemn even for its main line, sidetracks and spurs a strip of land as wide as that thus acquired by purchase.

Although the railway company was not authorized to condemn lands for the purposes and to the extent thus acquired, it not only had the right to do so, but it was its duty to acquire lands adequate for this purpose at this or some other appropriate point, to the end that it might adequately perform its public duties.

The fact that it did thus by purchase acquire lands in excess of the width which the statute allowed it to condemn, taken with the fact that it acquired the lands in fee, was sufficient notice to the property owner that they might be used for such corporate purposes as these lands were afterwards put to.

If the property owner therefore desired to reserve to himself the crossing to which he was already entitled, and which had become appurtenant to the land

thus previously conveyed, he should have reserved it to himself by appropriate reservation in his deed of conveyance.

It results that the decree of the court of civil appeals is reversed, and the case is dismissed.